UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>GANNETT CO., INC.,<br>BELO CORP., and<br>SANDER MEDIA LLC,<br><br>        Defendants. | CASE NO. 13-CV-1984<br><br>JUDGE: RBW |

## HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

### I. DEFINITIONS

As used in this Hold Separate Stipulation and Order:

A.  "Acquirer" means the entity to which the Defendants divest the Divestiture Assets.

B.  "Gannett" means defendant Gannett Co., Inc., a Delaware corporation, with its headquarters in McLean, Virginia, and includes its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, joint ventures, directors, officers, managers, agents, and employees.

C.  "Belo" means defendant Belo Corp., a Delaware corporation, with its headquarters in Dallas, Texas, and includes its successors and assigns, and its subsidiaries,

divisions, groups, affiliates, partnerships, joint ventures, directors, officers, managers, agents, and employees.

D. "Sander" means defendant Sander Media LLC, a Delaware limited liability company, with its headquarters in Scottsdale, Arizona, and includes its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, joint ventures, directors, owners, officers, managers, agents, and employees.

E. "DMA" means Designated Market Area as defined by A.C. Nielsen Company based upon viewing patterns and used by the *Investing In Television BIA Market Report 2013* (1st edition). DMAs are ranked according to the number of households therein and are used by broadcasters, advertisers, and advertising agencies to aid in evaluating television audience size and composition.

F. "KMOV-TV" means the CBS-affiliated broadcast television station located in the St. Louis DMA owned by Belo and being sold to Sander as part of the Transaction.

G. "Divestiture Assets" means all of the assets, tangible or intangible, used in the operation of KMOV-TV, including, but not limited to, all real property (owned or leased) used in the operation of the station, all broadcast equipment, office equipment, office furniture, fixtures, materials, supplies, and other tangible property used in the operation of the station; all licenses, permits, authorizations, and applications therefore issued by the Federal Communications Commission ("FCC") and other government agencies related to that station; all contracts (including programming contracts and rights), agreements, network affiliation agreements, leases and commitments and understandings of Belo or Sander relating to the operation of KMOV-TV; all trademarks, service marks, trade names, copyrights, patents, slogans, programming materials, and promotional materials relating to KMOV-TV; all customer lists, contracts, accounts, and credit records; and all logs and other records maintained by Belo or Sander in connection with

KMOV-TV, provided, however, that Divestiture Assets does not include physical assets located outside of the St. Louis DMA (e.g., corporate infrastructure), group-wide corporate records, employee benefit plans, group-wide insurance policies, group-wide service contracts, group-wide software licenses and digital systems, the trademarks "Belo" or "Sander," or the Shared Services Agreement or other agreements referenced in the Asset Purchase Agreement dated June 12, 2013, and its subsequent amendments.

H. "Transaction" means the merger and acquisition contemplated by the Agreement and Plan of Merger, dated June 12, 2013, by and among Belo, Gannett, and Delta Acquisition Corp. and all related agreements, including Sander's acquisition of certain Belo stations and all agreements entered into between Gannett and Sander contemplated by the Asset Purchase Agreement, dated June 12, 2013, and its subsequent amendments.

I. "Shared Services Agreement" means the Shared Services Agreement between Gannett and Sander contemplated by the Transaction in substantially the same form as Exhibit C(2) to the Agreement and Plan of Merger dated June 12, 2013, by and among Belo, Gannett, and Delta Acquisition Corp.

## II. OBJECTIVES

The proposed Final Judgment filed in this case is meant to ensure Defendants' prompt divestiture of the Divestiture Assets for the purpose of preserving competition in the sale of broadcast television spot advertising in the St. Louis DMA in order to remedy the effects that the United States alleges would otherwise result from Gannett's proposed acquisition of Belo, the sale of KMOV-TV to Sander, and Sander's operation of KMOV-TV subject to various agreements between Sander and Gannett that are part of or otherwise related to the Transaction. This Hold Separate Stipulation and Order ensures that competition is maintained during the pendency of the ordered divestitures and that the Divestiture Assets remain independent,

economically viable, and ongoing business concerns that will remain independent and uninfluenced by Gannett, by the consummation of Gannett's acquisition of Belo, or by any continuing relationship between Gannett and Sander, except as specifically provided by the terms of the Shared Services Agreement.

### III. JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this action and over each of the parties hereto, and venue of this action is proper in the United States District Court for the District of Columbia.

### IV. COMPLIANCE WITH AND ENTRY OF THE PROPOSED FINAL JUDGMENT

A.  The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court upon the motion of any party, or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act (APPA), 15 U.S.C. § 16, and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on the Defendants and by filing that notice with the Court.

B.  Defendants agree to arrange, at their expense, publication as quickly as possible of the newspaper notice required by the APPA, which shall be drafted by the United States in its sole discretion. The publication shall be arranged no later than three (3) business days after Defendants' receipt from the United States of the text of the notice and identity of the newspaper within which the publication shall be made. Defendants shall promptly send to the United States (1) confirmation that publication of the newspaper notice has been arranged and (2) the certification of the publication prepared by the newspaper within which the notice was published.

C. Defendants shall abide by and comply with the provisions of the proposed Final Judgment pending entry of the Final Judgment by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the signing of this Hold Separate Stipulation and Order by the parties, comply with all the terms and provisions of the proposed Final Judgment. The United States shall have the full rights and enforcement powers in the proposed Final Judgment, including Section X of the proposed Final Judgment, as though the same were in full force and effect as an order of the Court.

D. Defendants shall not consummate the transaction sought to be enjoined by the Complaint herein before the Court has signed this Hold Separate Stipulation and Order.

E. This Hold Separate Stipulation and Order shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

F. In the event (1) the United States has withdrawn its consent, as provided in Paragraph IV(A) above, or (2) the proposed Final Judgment is not entered pursuant to this Hold Separate Stipulation and Order, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Hold Separate Stipulation and Order, and the making of this Hold Separate Stipulation and Order shall be without prejudice to any party in this or any other proceeding.

G. Defendants represent that the divestitures ordered in the proposed Final Judgment can and will be made expeditiously and that Defendants will later raise no claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V. **HOLD SEPARATE PROVISIONS**

Until the divestitures required by the Final Judgment have been accomplished:

A. Defendants shall preserve, maintain, and continue to operate the Divestiture Assets as an independent, ongoing, economically viable, competitive business, with management, sales and operations of such assets held entirely separate, distinct and apart from those of Gannett's other operations, except as specifically provided by the terms of the Shared Services Agreement. Gannett shall not coordinate production, marketing, or terms of sale of any products with those produced by or sold under any of the Divestiture Assets, except as specifically provided by the terms of the Shared Services Agreement. Defendants shall take all steps necessary to preserve and maintain the value and goodwill of the Divestiture Assets. Within twenty (20) calendar days after the entry of the Hold Separate Stipulation and Order, Defendants will inform the United States of the steps Defendants have taken to comply with this Hold Separate Stipulation and Order.

B. Defendants shall take all steps necessary to ensure that (1) the Divestiture Assets will be maintained and operated as independent, ongoing, economically viable and active competitors in the sale of broadcast television spot advertising; (2) management of the Divestiture Assets will not be influenced by Gannett; and (3) the books, records, competitively sensitive sales, marketing and pricing information, and decision-making concerning production, distribution or sales of products by or under any of the Divestiture Assets will be kept separate and apart from Gannett's other operations.

C. Defendants shall preserve, in accordance with current practice, the existing relationships with each broadcast television spot advertising customer and with others doing business with any of the Divestiture Assets.

D. Defendants shall use all reasonable efforts to maintain and increase the sales and revenues of the Divestiture Assets and shall maintain at 2013 levels or previously approved levels for 2014, whichever are higher, all promotional, advertising, sales, technical assistance, marketing, and merchandising support for the Divestiture Assets.

E. Defendants shall, to the extent permitted by the terms and conditions of the FCC's Equity-Debt Plus rule (47 C.F.R. § 73.3555, note 2(i)), provide sufficient working capital and lines and sources of credit to continue to maintain the Divestiture Assets as an economically viable and competitive ongoing business.

F. Defendants shall take all steps necessary to ensure that the Divestiture Assets are fully maintained in operable condition at no less than current capacity and sales and shall maintain and adhere to normal repair and maintenance schedules for the Divestiture Assets.

G. Defendants shall not, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, remove, sell, lease, assign, transfer, pledge, or otherwise dispose of any of the Divestiture Assets, except for such pledges by Sander that are necessary for the Transaction.

H. Defendants shall provide such support services for the Divestiture Assets as the Divestiture Assets require to operate as economically viable, competitive, and ongoing providers of commercial broadcast television in the St. Louis DMA. These support services may include federal, state, and local municipal regulatory compliance; human resources; legal; finance; software and computer operations support; and such other services as are required to operate the Divestiture Assets.

I. Defendants shall maintain, in accordance with sound accounting principles, separate, accurate and complete financial ledgers, books and records that report on a periodic

basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets.

 J. Defendants shall take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets to an Acquirer acceptable to the United States in its sole discretion.

 K. Defendants' employees with primary responsibility for the Divestiture Assets shall not be transferred or reassigned to other areas within Defendants' business, except for transfer bids initiated by employees pursuant to Defendants' regular, established job posting policy. Defendants shall provide the United States with ten (10) calendar days' notice of any such transfer.

 L. Subject to the approval of the United States, Defendants shall appoint a person or persons to oversee the Divestiture Assets, and who will be responsible for Defendants' compliance with this section. This person shall have complete managerial responsibility for the Divestiture Assets, subject to the provisions of this Final Judgment. In the event such persons are unable to perform their duties, Defendants shall appoint, subject to the approval of the United States, a replacement within ten (10) working days. Should Defendants fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement.

 M. Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the Final Judgment to complete the divestitures pursuant to the Final Judgment to an Acquirer acceptable to the United States.

## VI. DURATION OF HOLD SEPARATE OBLIGATIONS

Defendants' obligations under Section V of this Hold Separate Stipulation and Order shall remain in effect until (1) consummation of the divestitures required by the proposed Final Judgment or (2) further order of the Court. If the United States voluntarily dismisses the

8

Complaint in this matter, Defendants are released from all further obligations under the Hold Separate Stipulation and Order.

Respectfully submitted,

**FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

*/s/ Anupama Sawkar*

Anupama Sawkar
United States Department of Justice
Antitrust Division
Telecommunications and Media Section
450 Fifth Street, N.W., Suite 7000
Washington, D.C. 20530
Phone: 202-514-5813

**FOR DEFENDANT GANNETT CO., INC.**

*/s/ Michael P. A. Cohen*

Michael P. A. Cohen (D.C. Bar #435024)
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
Telephone: 202-551-1880

*/s/ Gordon L. Lang*

Gordon L. Lang (D.C. Bar #932731)
Nixon Peabody LLP
401 9th Street, N.W., Suite 900
Washington, D.C. 20004-2128
Telephone: 202-585-8319

**FOR DEFENDANT SANDER MEDIA LLC**

*/s/ J. Parker Erkmann*

J. Parker Erkmann (D.C. Bar #489965)
Dow Lohnes LLP
1200 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036-6802
Telephone: 202-776-2036

Dated: December 16, 2013

**FOR DEFENDANT BELO CORP.**

*/s/ Joseph D. Larson*

Joseph D. Larson
*(applying for pro hace vice admission)*
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, N.Y. 10019
Telephone: 212-403-1360

<u>**ORDER**</u>

IT IS SO ORDERED by the Court, this 20th day of December, 2013.

*/s/ Reggie B. Walton*
United States District Judge